```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-8-13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

MARK MORGAN,

                              Plaintiff,

                 -against-

NYS ATTORNEY GENERAL'S OFFICE,
CHIEF VITO SPANO,
SUPERVISOR THOMAS BURKE,
SUPERVISOR THOMAS CREELMAN,
NYS ATTORNEY GENERAL ERIC T.
SCHNEIDERMAN, and
NYS OFFICE OF ATTORNEY GENERAL
HUMAN RESOURCES DIRECTOR ROBERT
PABLO,

                              Defendants.

-----------------------------------------------------------x

11 Civ. 9389 (PKC) (JLC)

MEMORANDUM
AND ORDER

P. KEVIN CASTEL, District Judge:

                 Plaintiff Mark Morgan, proceeding pro se, brings this employment discrimination

action against the New York State Attorney General's Office (the "OAG"), Chief Vito Spano of

the OAG Medicaid Fraud Control Unit (the "MFCU"), MFCU Supervisors Thomas Burke and

Thomas Creelman, New York State Attorney General Eric T. Schneiderman, and OAG Director

of Human Resources Robert Pablo.  He alleges claims pursuant to Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the New York State Human Rights Law,

N.Y. Exec. L. § 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y. City

Admin. Code § 8-101 et seq. ("NYCHRL").  Morgan alleges that defendants subjected him to

unlawful discrimination, a hostile work environment, and retaliation on the basis of his national

origin and gender.  Defendants move to dismiss Morgan's Amended Complaint (Docket # 17)

pursuant to Rule 12(b)(6), Fed.R.Civ.P.

For the reasons stated below, defendants' motion to dismiss is GRANTED in part and DENIED in part.

BACKGROUND

The following facts are taken from the Amended Complaint and assumed to be true for the purposes of deciding this motion.  Morgan is a Caucasian male born in the Republic of Georgia.  (Am. Compl. at 25.)  From October 2002 until his termination on April 4, 2011, Morgan was employed by the OAG, where he worked as an investigative clerk and then a special investigator in the MFCU.  (Id. at 3.)  In the Amended Complaint, Morgan alleges numerous instances of harassment and mistreatment that he suffered during his employment at the OAG.[1]

On an unspecified date in 2007, Creelman, Morgan's then-supervisor, "wrote a memorandum that he was promoting the female Russian speaking clerk who had considerably less experience" than Morgan.  (Id. at 8.)  Morgan alleges that Creelman discriminated against him on the basis of Morgan's gender and national origin by recommending the promotion of the less experienced female clerk.  (Id.)

On September 28, 2009, Burke, Morgan's then-supervisor, gave Morgan a four-out-of-five rating in his annual performance evaluation.  (Id. at 12.)  Morgan refused to sign the evaluation because he thought he deserved a five in light of the "excellent job" he did on a large Medicaid fraud case.  (Id.)  Burke told Morgan that he could only give two five ratings and that those ratings were going to the investigators who were going to be promoted.  (Id.)  Morgan responded to Burke that he felt that his receiving a four and not a five was a direct result of his

---

[1] Morgan has attached fifty-two pages of documents to the standard form complaint which provide a disjointed narrative of Morgan's troubles at the MFCU.  Morgan, at great length, describes numerous perceived injustices that he encountered during his employment, many of which are not germane to any potential claim under Title VII, the NYSHRL, or the NYCHRL.  (E.g., Am. Compl. at 16-25 (describing alleged attempts by MFCU supervisors to improperly hinder the Strike Force operation); id. at 19-20 (describing alleged budget mismanagement by MFCU supervisors).)  Only the incidents which are potentially relevant to an employment discrimination claim are recounted in this Section.

not being born in the United States.  (Id.)  Morgan alleges that Burke discriminated against him on the basis of his national origin by giving him this rating.  (Id.)

In the summer of 2009, Morgan became a member of a special operation undertaken by a MFCU squad of which Burke was the supervisor (the "Strike Force operation"). (Id. at 17.)  Repeated disagreements between Morgan and Burke arising from the MFCU's participation in the Strike Force operation ignited an intense personal conflict between the two men.  On June 21, 2010, Morgan sent an e-mail to MFCU Chief Spano and Deputy Chief Fisher, complaining that as a result of these disagreements,

> [Burke] began to make a hostile work environment for me.  During the ten months of investigation, a couple of times a week he would yell at me in his office as well as outside of his office, in front of other employees.  It appeared that he was trying to destroy my reputation because I did not do what he asked [regarding the Strike Force operation].
>
> . . . .
>
> Burke began to hurt my reputation by calling me a trouble maker, and accused me of recording the conversations on the blackberry . . . and insulted me in front of other employees.
>
> . . . .
>
> [Burke] came to my desk . . . with an aggressive manner and raised his voice and screamed at me to give him the [Strike Force operation] case folder . . . . After this he reported me for being insubordinate because I did not give him the [ ] case folder . . . . I believe that this was his excuse so that he could punish me for working so hard with the feds on this investigation . . . .

(Id. at 23-25.)[2]  In the Amended Complaint, Morgan further claims that Burke "used his authority . . . and told his squad members not to talk to [Morgan] . . . . and informed them that [Morgan]

---

[2] The e-mails described herein are attached to the Amended Complaint, and the Court properly considers them in deciding this motion.  See Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

was taping conversation with other co-workers . . . . in order to set plot against [Morgan] and destroy [his] good reputation." (Id. at 14.)

'On many occasions throughout [Morgan's] employment," Creelman and Burke ridiculed Morgan and mimicked his accent. (Id. at 8.) On one unspecified date, Creelman sat in Morgan's cubicle while Morgan was away from his desk, and "pretended to be [Morgan], exaggerating [his] accent and saying inappropriate things." (Id.) Morgan's co-worker who sat at the adjacent cubicle did not realize that it was Creelman, and not Morgan, making the comments, and the co-worker became very upset with Morgan. (Id. at 8-9.) On another occasion, Morgan attended a co-worker's retirement party at a local restaurant. (Id. at 9.) All of the members of Morgan's MFCU squad were sitting at a table eating dinner when Burke, the squad supervisor, stood up and began to ridicule Morgan, mimicking his accent and embarrassing him in front of his co-workers. (Id.)

One day in the fall of 2010, a member of Burke's MFCU squad who "carries a gun" threatened Morgan, telling an investigator who worked near Morgan to "duck when he fired shots at [Morgan] so that [the investigator] would not be hurt in the cross fire." (Id. at 10.)

On October 29, 2010, Morgan "was provoked by Burke and Creelman, who publicly laughed in [his] face." (Id. at 9.) Morgan alleges that they were trying "to instigate trouble and provoke me to say something to them so that they can write a complaint against me one day before my evaluation." (Id. at 27.) Even though Morgan ignored the provocation, Burke and Creelman reported that Morgan "made comments against them" and Morgan was admonished for this in his subsequent evaluation. (Id. at 9.) On October 31, 2010, Morgan sent an e-mail to Spano complaining of this incident. (Id. at 26-30.) Morgan also stated in the e-mail that he

"would like to follow up if an investigation has been opened regarding my written complaint earlier this year against my former boss, Supervisor T. Burke." (Id. at 27.)

One day in November 2010, while Morgan was out of the office, Chief Spano moved Morgan's desk from its existing location out to the hallway, near the exit door. (Id. at 9.) Morgan states that "[t]his retaliation was humiliating, harassing, and abusive . . . . I was treated like a child being put in a time out chair." (Id.) Morgan alleges that Spano moved his desk as "punishment" because Morgan had sent Spano the two aforementioned e-mails complaining about harassment inflicted by Burke and Creelman. (Id.)

On February 18, 2011, Morgan attended a Human Resources training session on harassment and discrimination. (Id. at 10.) Morgan asked when a response could be expected after a harassment complaint is made against a superior. (Id.) After the training session, Morgan overheard Burke ask another investigator who had attended the training session whether Morgan had asked any questions. (Id.) The investigator told Burke about Morgan's question, and Burke allegedly replied "I am going to report Chief Spano, now." (Id.) Morgan, at Spano's direction, was admonished in his subsequent evaluation "for trying to get Burke upset." (Id.)

In February 2011, Morgan sent an e-mail to his supervisors Ralph Aquino and Deputy Chief Fisher seeking "information that [Morgan] received from a complainant to be verified". (Id. at 11.) The supervisors forwarded the e-mail to Creelman "[s]ince the e-mail was concerning someone in a Creelman's squad." (Id.) Despite the fact that Fisher allegedly directed Creelman not to share the confidential e-mail, Creelman forwarded it to Burke, who showed the e-mail to his squad and told them that Morgan had been complaining about a co-worker. (Id.) Morgan alleges that he did not complain about a co-worker, and that this "inappropriate behavior by both [Creelman and Burke] is harassment and retaliation." (Id.)

On April 4, 2011, Morgan sent an e-mail to Spano, OAG Human Resources Director Pablo, and other "superiors of the NYS OAG," describing how over the course of his tenure at the MFCU, he had been "harassed, mistreated, discriminated against and accused of things that never happened." (Id. at 13, 50-54.)  The e-mail repeated many of the same allegations of harassment that were stated in Morgan's prior e-mails, as well as new allegations of workplace misconduct by Burke, Creelman, and Spano.  (Id. at 50-54.)  The e-mail was both defensive in nature, (see id. at 50 (opening sentence of e-mail: "I am writing this e-mail as I am forced to fight for my life and my career")), as well as highly confrontational, (see id. at 53 (telling Spano that "if anyone should resign after this it is you and your clan for unprofessional conducts and lack of supervision and leadership . . . .  I strongly believe that you and your clan do not suit [sic] in this agency and I will prove it"); id. at 54 (comparing Spano to "the Communists" in the "Soviet Union System")).  Morgan concluded the e-mail by writing "I would appreciate being informed of any actions taken by the Agency as a result of the issues raised in [the aforementioned e-mails] regarding misconduct, discrimination, harassment, and verbal abuse.  I am requesting a thorough investigation regarding these complain [sic] matters." (Id. at 54.)

Morgan's employment was terminated April 4, 2011, the same day he sent this e-mail.  (Id. at 13.)  Morgan alleges that "NYS AG Eric T. Schneiderman and Agency Director Robert Pablo discriminated against me not to investigate my complaints, they treated me differently by not taking under consideration my complaints and on the base [sic] of discrimination they retaliated against me and terminated my employment." (Id. at 15.)

Morgan filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC") on or about May 5, 2011, (id. at 3), and received from the EEOC a Notice of Right to Sue on September 28, 2011, (id. at 4, 6-7).  Morgan commenced the

present action on December 21, 2011, (Docket #1), and filed the Amended Complaint on April

19, 2011, alleging the discriminatory actions described above as well as a hostile work

environment and retaliation.  (Docket #17).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007)). "'[L]abels and conclusions' or 'a formulaic recitation of the elements of

a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).  Rather, a plaintiff must

plead "factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Id. at 556.  In considering a Rule 12(b)(6) motion to dismiss,

all non-conclusory factual allegations are accepted as true, and all reasonable inferences are

drawn in favor of the plaintiff.  See In re Elevator Antitrust Litig., 502 F.3d 47, 50-51 (2d Cir.

2007) (per curiam).

"It is well established that the submissions of a pro se litigant must be construed

liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed.

Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations omitted).  This applies

with particular force when a pro se plaintiff alleges a civil rights violation.  McEachin v.

McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004).

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), consideration is

generally limited to the factual allegations in the complaint.  Rule 12(d), Fed.R.Civ.P.  A court,

however, may also consider documents incorporated by reference or attached to the complaint as

exhibits, as well as items of which judicial notice may be taken.  Samuels v. Air Transp. Local

504, 992 F.2d 12, 15 (2d Cir. 1993).  Additionally, a court may in certain circumstances consider a document "where the complaint relies heavily upon [the document's] terms and effect, [thus] render[ing] the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotations omitted).

## DISCUSSION

I.    PLAINTIFF'S DISPARATE TREATMENT, HOSTILE WORK ENVIRONMENT, AND RETALIATION CLAIMS UNDER TITLE VII

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an individual on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).  To establish a prima facie case of discrimination under Title VII, a plaintiff must show that "(1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class." Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005). "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.  To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal quotations omitted).  A change that is "materially adverse" could consist of, inter alia, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. (ellipses in original) (internal quotations omitted).

Additionally, a defendant may be liable under Title VII for creating a hostile work environment if "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations omitted), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).  To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts which tend to show that the complained of conduct: "(1) 'is objectively severe or pervasive – that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex,'" Patane v. Clark, 508 F.3d 106, 13 (2d Cir. 2007) (per curiam) (quoting Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001)), or because of another characteristic protected by Title VII, Gregory, 243 F.3d at 692 (indicating that any characteristic protected by Title VII is sufficient to satisfy the third element).  Factors that courts consider in evaluating a hostile work environment claim include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

Title VII also contains an "antiretaliation provision," which "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e-3(a)).  To establish a prima facie case of retaliation in violation of Title VII, a plaintiff must show: "(1) participation in a protected activity; (2) that

the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotations omitted).  An employment action in the retaliation context is adverse if it "would have been materially adverse to a reasonable employee or job applicant." Id. at 165 (internal quotations omitted). "Actions are 'materially adverse' if they are 'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id. (quoting White, 548 U.S. at 57).

   a. Defendants' Motion to Dismiss Plaintiff's Title VII Claims Against the Individual Defendants Is Granted.

"[I]ndividuals are not subject to liability under Title VII." Wrighten v. Glowski, 232 F.3d 119, 119 (2d. Cir. 2000) (per curiam) (citations omitted).  This exemption from personal liability extends to all individual employees, including those with supervisory control over the plaintiff.  See Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).  Therefore, all Title VII claims asserted against the individual defendants, to wit, Spano, Burke, Creelman, Attorney General Schneiderman, and Pablo, are dismissed.

   b. Defendants' Motion to Dismiss Plaintiff's Title VII Failure-to-Promote Claims as Untimely is Granted.

Morgan alleges that he was discriminated on the basis of his national origin and gender in 2007 when Creelman promoted a female clerk who was purportedly "considerably less experience[d]" than Morgan, rather than promoting Morgan.[3]  (Am. Compl. at 8.)  Morgan further

---

[3] Morgan includes the following statement in the middle of the Amended Complaint, disconnected from the surrounding text: "The agency has historically been run by male chiefs and in this day and age, the time has come for females to have a leadership role within investigative division in this organization.  Having solely male leaders does not create a healthy work environment in today's society.  The workplace should be diverse; combining backgrounds, ethnicity and gender." (Am. Compl. at 14.)  To the extent, if any, that Morgan is alleging any gender discrimination claims based on injuries suffered by Morgan's female co-workers, such claims are dismissed; Morgan's "concern for a woman's right to be free of workplace discrimination . . . does not make [plaintiff] himself

alleges that he was discriminated on the basis of his national origin on September 28, 2009, when Burke gave Morgan a four out of five rating in his annual performance, in effect depriving him of a promotion.  (Id. at 12.)

"As a prerequisite to filing suit under Title VII, a private plaintiff must first file a timely charge with the EEOC." Chin v. Port Authority of New York & New Jersey, 685 F.3d 135, 146 (2d Cir. 2012) (citing 42 U.S.C.§2000e-5(e)(1), (f)(1)).  In New York, this charge must be filed with the EEOC within 300 days of the alleged discriminatory act.  See 42 U.S.C.§2000e-5(e); Harris v. City of New York, 186 F.3d 243, 248 n.2 (2d Cir. 1999).  Title VII precludes recovery for discrete acts of discrimination which occur outside of this statutory time period, regardless of whether such acts are related to other discriminatory acts alleged in timely filed charges.  See Chin, 685 F.3d at 156; see also National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002).

Morgan alleges that he filed a charge with the EEOC on May 5, 2011.  (Am. Compl. at 3.)  Although Morgan does not attach this filing to the Amended Complaint, defendants, in support of their motion to dismiss, submit both an EEOC Intake Questionnaire, signed by Morgan on May 5, 2011, (Klekman Decl. Ex. C), as well as an EEOC Charge of Discrimination against the OAG, signed by Morgan on June 23, 2011 and received by the EEOC on June 24, 2011, (Klekman Decl. Ex. D).  First, the Court properly considers these documents without converting defendants' motion to one for summary judgment because these documents are "integral to the complaint," Holowecki v. Fed. Express Corp., 440 F.3d 558, 565-66 (2d Cir. 2006) ("[I]t is proper for this court to consider the plaintiff's relevant filings with the EEOC . . .

---

a victim of gender-based discrimination within the scope of Title VII's protections."  Krasner v. HSH Nordbank AG, 680 F.Supp.2d 502, 515 (S.D.N.Y. 2010) (Lynch, J., sitting by designation) (noting that "far from endorsing it, the Second Circuit has repeatedly questioned whether a male employee would have standing to pursue such a third-party discrimination claim" (citing Leibovitz v. New York City Transit Auth., 252 F.3d 179, 186 (2d Cir. 2001))).

none of which were attached to the complaint, because the [ ] plaintiffs rely on these documents to satisfy the ADEA's time limit requirements."), aff'd, 552 U.S. 389 (2008); "no dispute exists regarding the authenticity or accuracy of the document[s]," Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006); and "there exist no material disputed issues of fact regarding the relevance of the document[s]," Faulkner, 463 F.3d at 134.

Next, the Court must determine which of these EEOC filings constitutes the "charge" for the purposes of conducting the timeliness analysis, because an EEOC Intake Questionnaire can, in certain circumstances, constitute a "charge" for timeliness purposes. See Federal Express Corp. v. Holowecki, 552 U.S. 389 (2008). The Court—for the purposes of deciding this motion, and with the understanding that the timeliness analysis yields identical results regardless of which filing is deemed to constitute the "charge"—treats the date of the EEOC Intake Questionnaire, May 5, 2011, as the date of the filing of the charge, because pro se pleadings are to be liberally construed, Triestman, 470 F.3d at 474-75, and "[d]ocuments filed by an employee with the EEOC should be construed . . . to protect the employee's rights and statutory remedies," Holowecki, 552 U.S. at 406. Therefore, because Morgan filed a charge with the EEOC on May 5, 2011, any claims based upon discrete acts of discrimination which occurred prior to July 9, 2010, 300 days prior to the EEOC filing, are time-barred.

Morgan claims that Creelman discriminated against him on the basis of his national origin and gender in 2007 by failing to promote Morgan. Because failure to promote is a discrete act, and this act took place prior to July 9, 2010, Morgan's Title VII discrimination claim based on this incident is untimely and time-barred.[4] See Chin, 685 F.3d at 157 ("[E]very failure to promote is a discrete act . . . . Discrete acts of this sort, which fall outside the

---

[4] Defendants alternatively move to dismiss Morgan's gender discrimination claim for failure to exhaust administrative remedies and failure to state a claim. The Court need not address these alternative grounds for dismissal because the claim is barred as untimely.

limitations period, cannot be brought within it, even when undertaken pursuant to a general

policy that results in other discrete acts occurring within the limitations period.").  Similarly,

assuming for the purposes of this analysis that the September 28, 2009 annual performance

rating constitutes an adverse employment action, Morgan's national origin discrimination claim

based on this action is untimely and time-barred because this action took place prior to July 9,

2010.

      c.  Defendants' Motion to Dismiss Plaintiff's Remaining Title VII Disparate
          <u>Treatment Claim is Denied.</u>

Morgan alleges one additional Title VII disparate treatment claim that was not

dismissed in the preceding sections–that he was discriminated against on the basis of his national

origin when he was terminated from the OAG on April 4, 2011.[5]  Defendants assert that Morgan

has failed to plausibly allege this remaining disparate treatment claim.

As a preliminary matter, the Court notes that "[t]he pleading standard for

employment discrimination complaints is somewhat of an open question in our circuit."  <u>Hedges</u>

<u>v. Town of Madison</u>, 456 Fed.Appx. 22, 23 (2d Cir. 2012) (summary order).  In essence, it is

unclear whether a plaintiff claiming employment discrimination must plead a <u>prima facie</u> case

under the <u>McDonnell-Douglas</u> framework, or whether a plaintiff need only give the defendant

fair notice of what the plaintiff's claim is and the grounds upon which it rests.  <u>Id.</u> (discussing but

declining to resolve the conflict between <u>Swierkiewicz</u>, <u>Tombly</u>, and <u>Iqbal</u>).  This issue need not

be addressed here because the Court concludes that Morgan's complaint alleges facts sufficient to

state a disparate treatment claim under both the notice-pleading standard and the more

---

[5] Defendants additionally move to dismiss Morgan's purported disparate treatment claim arising from Morgan's removal from the Strike Force operation in the summer of 2009 by Monica Hickey Martin.  Martin is not a defendant in this case, Morgan does not allege that any of the named defendants took part in this action, and Morgan does not allege that this action was the result of discrimination.  The Court thus concludes that Morgan is not alleging a claim of disparate treatment based upon the 2009 incident.

demanding McDonnell-Douglas framework.  See Schwab v. Smalls, 435 Fed.Appx. 37, 40 (2d Cir. 2011) (summary order) (discussing but declining to resolve the conflict between Swierkiewicz, Tombly, and Iqbal because of conclusion that plaintiff's complaint alleged facts sufficient to state an employment discrimination claim under either standard).

Defendants do not dispute that Morgan pled sufficient facts to satisfy the first three prongs of the McDonnell-Douglas framework: Morgan was born in the Republic of Georgia, and is thus a member of a protected class; he alleges at length that he performed his duties satisfactorily, (e.g., Am. Compl. at 5 ("I did an excellent job as a case investigator on major case, one of the biggest cases in the entire nation in Medicaid fraud.")); and he suffered an adverse employment action when he was terminated.  See Dawson, 398 F.3d at 216.  Rather, defendants argue that Morgan has failed to satisfy the final prong of the test by failing to plead facts that raise an inference of discrimination based on Morgan's national origin.

The Court disagrees.  Morgan alleges that Creelman and Burke "[o]n many occasions throughout [Morgan's] employment . . . ridiculed [Morgan] and mimicked [his] accent," including the two specific incidents described above in which Creelman sat in Morgan's cubicle while Morgan was absent, "exaggerating [Morgan's accent] and saying inappropriate things," and in which Burke humiliated Morgan in front of his co-workers by "making fun of [Morgan] and [his] accent." (Am. Compl. at 8-9.)  This ridicule and mimicking of Morgan's accent "could be viewed as reflecting a discriminatory animus." Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996) ("[C]ircumstances that give rise to an inference of discriminatory motive include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus . . . .") (citing Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 182 (2d Cir. 1992)); see also 29 C.F.R. § 1606.1 ("The [EEOC] defines national origin discrimination

broadly as including, but not limited to, the denial of equal employment opportunity . . . because an individual has the . . . linguistic characteristics of a national origin group."). "[C]omments ridiculing an employee's accent may be relevant evidence of national-origin animus," <u>Guimaraes v. SuperValu, Inc.</u>, 674 F.3d 962, 974-75 (8th Cir. 2012), and district courts in this Circuit have regularly noted that "comments about a person's accent may be probative of discriminatory intent," <u>Altman v. N.Y.C. Dept. of Educ.</u>, No. 06 Civ. 6319(HB), 2007 WL 4372824, at *4 (S.D.N.Y. Dec. 12, 2007) (quoting <u>Thelusma v. N.Y.C. Bd. of Educ.</u>, No. 02-CV-4446(FB), 2006 WL 2620396, at *3 (E.D.N.Y. Sept. 13, 2006)); <u>see also</u> <u>Manko v. Deutsche Bank</u>, 554 F.Supp.2d 467, 479 (S.D.N.Y. 2008) (same).  Moreover, a plaintiff's <u>prima facie</u> burden to show an inference of discriminatory intent is "minimal." <u>Sassaman v. Gamache</u>, 566 F.3d 307, 312 (2d Cir. 2009).  This Court therefore concludes that the facts alleged in the Amended Complaint are sufficient to meet the pleading standard for employment discrimination.  Defendants' motion to dismiss this claim is denied.[6]

       d.   Defendants' Motion to Dismiss Plaintiff's Title VII Hostile Work <u>Environment Claim is Denied.</u>

Defendants also assert that Morgan has failed to plausibly allege a hostile work environment claim. "Ultimately, to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse,' and '[the Second Circuit] ha[s] repeatedly cautioned against setting the bar

---

[6] The Amended Complaint alleges facts sufficient to demonstrate at the pleading stage that Creelman and Burke "played a meaningful role" in the termination process.  See <u>Kenchi v. Hanesbrands Inc.</u>, No. 10 Civ. 1662(PKC), 2011 WL 4343418, at *5 (S.D.N.Y. Aug. 12, 2011) ("The Second Circuit has concluded, however, that even when the ultimate decisionmaker has no record of discriminatory animus, a plaintiff may prove discrimination based on evidence that an 'individual shown to have [an] impermissible bias played a meaningful role in the . . . process.'" (quoting <u>Bickerstaff v. Vassar College</u>, 196 F.3d 435, 450 (2d Cir. 1999))); <u>accord</u> <u>Back v. Hastings on Hudson Union Free Sch. Dist.</u>, 365 F.3d 107, 125-26 (2d Cir. 2004).

too high' in this context." <u>Patane</u>, 508 F.3d at 113 (quoting <u>Terry v. Ashcroft</u>, 336 F.3d 128, 148 (2d Cir. 2003)).

Morgan pleads facts that are sufficient to meet this low standard, as Morgan alleges harassment inflicted by his supervisors that was frequent, severe, threatening, and humiliating.  (<u>See, e.g.</u>, Am. Compl. at 8 ("On many occasions throughout my employment . . . Creelman [ ] ridiculed me and mimicked my accent.  Also did my Supervisor Thomas Burke."); <u>id.</u> at 14, 23-25 (efforts by Burke to destroy Morgan's reputation, including insulting Morgan in front of Morgan's co-workers and telling Morgan's co-workers not to talk to Morgan); <u>id.</u> at 10 (member of Burke's squad threatening Morgan with physical violence); <u>id.</u> at 9 (Spano moving Morgan's desk out to the hallway, humiliating Morgan); <u>id.</u> at 11 (Creelman and Burke sharing Morgan's confidential e-mail with Morgan's co-workers and telling them that Morgan was complaining about co-workers).)  Although the only non-conclusory factual allegations of discrimination alleged by Morgan involve Creelman and Burke ridiculing and mimicking Morgan's accent, the other "facially neutral incidents [of harassment] may be included . . . among the 'totality of the circumstances' that courts consider" in evaluating the hostile work environment claim, "so long as a reasonable fact-finder could conclude that they were, in fact, based on [a protected characteristic]." <u>Kaytor v. Electric Boat Corp.</u>, 609 F.3d 537, 547 (2d Cir. 2010) (quoting <u>Alfano v. Costello</u>, 294 F.3d 365, 378 (2d Cir. 2002)).  Morgan is therefore entitled to proceed beyond the pleading stage with his hostile work environment claim.

      e.   Defendants' Motion to Dismiss Plaintiff's Title VII Retaliation Claims is <u>Granted.</u>

Defendants also assert that Morgan has failed to plausibly allege a retaliation claim.  Morgan appears to allege four different retaliatory acts: Spano moving Morgan's desk in retaliation for Morgan having complained about Burke and Creelman; Morgan being admonished in his February 2011 evaluation after asking questions at the Human Resources training session on harassment; Creelman and Burke sharing Morgan's confidential complaint about a co-worker with the members of Burke's squad; and Morgan being terminated in retaliation for Morgan having complained about his supervisors.

As set forth above, a claim of retaliation requires, <u>inter</u> <u>alia</u>, that the plaintiff engaged in "protected activity."  <u>See</u> <u>Hicks</u>, 593 F.3d at 164.  A protected activity is an activity taken in good faith to protest or oppose statutorily prohibited discrimination.  <u>See</u> <u>Kessler v. Westchester Cnty. Dep't of Soc. Servs.</u>, 461 F.3d 199, 210 (2d Cir. 2006) (noting that although an employment practice need not actually violate Title VII to satisfy the protected activity element, a plaintiff must nonetheless "have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII" (quoting <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 285 (2d Cir. 2001))).

Morgan's retaliation claims must be dismissed because Morgan has failed to plausibly allege that he engaged in any protected activity.  Although Morgan makes numerous conclusory allegations of retaliation, Morgan's lengthy Amended Complaint does not contain a single factual allegation that Morgan ever protested or opposed any statutorily prohibited discriminatory behavior, or had a reasonable belief that he was doing so.  For example, Morgan attaches to the Amended Complaint the two e-mails complaining about Burke and Creelman that he sent to Spano, which allegedly led Spano to retaliate by moving Morgan's desk.  (<u>Id.</u> at 21-25 (June 21, 2010 e-mail); <u>id.</u> at 26-30 (October 30, 2010 e-mail).)  These e-mails describe, at

length, work-related disagreements and general hostility between Morgan and Burke arising out of the Strike Force operation, as well as the incident in which Burke and Creelman provoked Morgan by laughing at him.  (Id.)  However, nothing in these e-mails remotely relates to discrimination or an alleged violation of the anti-discrimination statutes.  Therefore, sending these e-mails did not constitute protected activity, and Morgan's retaliation claim based on the moving of the desk is not actionable.

Similarly, regarding Morgan's participation in the Human Resources training session and his subsequent admonition in his evaluation, Morgan does not allege that he asked a question regarding discrimination or an unlawful employment practice, or otherwise complained about such behavior at the training session.  (See id. at 10.)  Indeed, Morgan confirms in the Amended Complaint that he only "asked a general question about the harassment complaint process concerning superiors and when a response could be expected after complaint is made." (Id.)  Morgan makes clear that this question specifically referenced his June 21, 2010 e-mail complaining about Burke.  (Id.)  As neither Morgan's question at the training session nor the underlying e-mail about Burke concerned discrimination, asking the question was not a protected activity.

Burke and Creelman sharing Morgan's confidential e-mail with Burke's squad likewise fails to support an actionable retaliation claim.  Morgan does not allege that Burke and Creelman shared this e-mail in response to any action taken by Morgan.  Indeed, Morgan does not allege any reason for why Burke and Creelman shared the e-mail, aside from the conclusory allegation that they did so "in order to retaliate against me." (Id. at 11.)   As Morgan fails to plead facts that would tend to show that he engaged in a protected activity, Morgan's retaliation claim based on this incident is dismissed.

The only statement in the Amended Complaint or in the fifty-two pages of e-mails attached thereto which indicates that Morgan ever mentioned discrimination to anyone at the OAG is found in the e-mail that Morgan wrote on the day of his termination.  (Id. at 50-54.) Morgan begins this e-mail by writing "I am forced to fight for my life and my career . . . .  During a large portion [of my employment], I have been harassed, mistreated, discriminated against and accused of things that never happened."  (Id. at 50.)  Morgan closes the e-mail by writing "I would appreciate being informed of any actions taken by the Agency as a result of the issues raised in my memos regarding misconduct, discrimination, harassment, and verbal abuse.  I am requesting a thorough investigation regarding these complain [sic] matters."  (Id. at 54.)  In the pages in between these conclusory allegations, Morgan rehashes the same general workplace grievances discussed above, making no mention of any action that could possibly be perceived as discriminatory, or any allegation that anybody at the OAG ever treated him differently because of his national origin.  Indeed, Morgan definitively states in this e-mail "I never complained about that [sic] colleagues in an office [sic] made a fun [sic] about my accent (Including Creelman,) and etc . . . ."  (Id. at 54) (ellipses in original.)  Considering that the mimicking and ridiculing of Morgan's accent is the only factual allegation pled by Morgan that raises any inference of discrimination, this concession further confirms that Morgan fails to plausibly allege that he ever protested a discriminatory practice, or had a reasonable belief that he was doing so.  Therefore, Morgan's Title VII retaliation claims are dismissed.

II.    PLAINTIFF'S DISCRIMINATION, HOSTILE WORK ENVIRONMENT,
       AND RETALIATION CLAIMS UNDER THE NYSHRL AND
       NYCHRL

Claims under the NYSHRL are construed pursuant to the same standards as its federal counterparts, including Title VII.  See Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000). "[C]laims under the [NYCHRL] must be reviewed independently from and 'more liberally' than their federal and state counterparts." Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (quoting Williams v. N.Y.C. Housing Auth., 61 A.D.3d 62, 66-69 (1st Dept. 2009)).

> a.   Defendants' Motion to Dismiss Plaintiff's NYSHRL and NYCHRL Claims for Money Damages Against the Defendants in Their Official Capacities is Granted.

Under the Eleventh Amendment to the United States Constitution, non-consenting states and their agencies are immune from suit in federal court.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97-100 (1984).  This sovereign immunity extends to 'arms of the state," such as the OAG, as well as to its officials sued in their official capacities for money damages.  See Sutherland v. New York State Dept. of Law, 96 CIV. 6935(JFK), 1999 WL 314186, at *5 (S.D.N.Y. May 19, 1999), aff'd, 216 F.3d 1073 (2d Cir. 2000).  "New York has not consented to suit in federal court through the [NYSHRL]." Cajuste v. Lechworth Dev. Disabilities Serv., 03 Civ. 0161(RCC), 2005 WL 22863, at *3 (S.D.N.Y. Jan. 5, 2005) (citations omitted); cf. Lambert v. New York State Office of Mental Health, 97-CV-1347(JG), 2000 WL 574193, at *7 (E.D.N.Y. Apr. 24, 2000) ('As district courts in this circuit have uniformly found, the New York [State] Human Rights Law includes no waiver of the state's immunity to suit in federal court."), aff'd, 22 Fed. App'x 71 (2d Cir. 2001).  Moreover, "[t]he City of New York does not have the power to abrogate the immunity of the state," and there is 'no evidence that the State has consented to suit in federal court under the NYCHRL." Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004).  Accordingly, Morgan's claims pursuant to the NYSHRL and the NYCHRL

against the OAG are dismissed.  To the extent Morgan's claims pursuant to the NYSHRL and the

NYCHRL seek money damages against the individual defendants who are sued in their official

capacities, they are dismissed.  To the extent that Morgan seeks an apology from Burke, (Am.

Compl. at 4), that is not actionable relief and the claim is dismissed.  To the extent the Amended

Complaint seeks the equitable relief of reinstatement, and assuming the individual defendants

have the power to provide this relief, Morgan's claims seeking such relief are entitled to proceed

beyond the pleading stage.

> b.   Defendant's Motion to Dismiss Plaintiff's NYSHRL and NYCHRL Claims as
>      Untimely is Granted with Respect to the NYSHRL and Granted in Part and
>      Denied in Part with Respect to the NYCHRL.

Barring certain exceptions which are not relevant here, the statute of limitations

under the NYSHRL and the NYCHRL is three years.  N.Y. C.P.L.R. 214(2); N.Y.C. Admin.

Code§8-502(d).  As the instant action was filed December 21, 2011, Morgan's discrimination

claims pursuant to those provisions are untimely to the extent the behavior underlying those

claims occurred prior to December 21, 2008.  Accordingly, defendants move to dismiss Morgan's

claims regarding Creelman allegedly discriminating against Morgan on the basis of his national

origin and gender when Creelman failed to promote Morgan in 2007.

These claims pursuant to the NYSHRL are time-barred and dismissed for the

same reasons they were dismissed pursuant to Title VII: the 2007 failure to promote is a discrete

act which occurred outside of the permissible statutory time period.  See Morgan, 536 U.S. at

122; Staff v. Pall, 233 F.Supp.2d 516, 527-28 (S.D.N.Y. 2002), aff'd, 76 Fed. App'x 366 (2d Cir.

2003) (applying the reasoning of Morgan to NYSHRL claims).

However, the same analysis does not apply to Morgan's claims pursuant to the

NYCHRL.  Prior to 2002, if a plaintiff experienced a continuous practice and policy of

discrimination, the "continuing violation doctrine" allowed for the commencement of the statute of

limitations period to be delayed until the occurrence of the last discriminatory act in furtherance

of that discriminatory practice.  In 2002, the Supreme Court limited this exception as it applies to

Title VII claims, holding that the continuing violation doctrine is inapplicable to discrete, time-

barred acts of discrimination, even when those acts are related to actionable ones.  See Morgan,

536 U.S. at 122.  Although earlier decisions by courts in this district applied Morgan's restrictive

holding to claims pursuant to the NYCHRL, e.g., Milani v. International Business Machines

Corp., Inc., 322 F.Supp.2d 434, 452 n.32 (S.D.N.Y. 2004), New York state courts have since

held that the more generous, pre-Morgan application of the continuing violation doctrine

continues to apply to NYCHRL claims.  Williams, 61 A.D.3d at 72.

   Accordingly, "[o]therwise time-barred discrete acts can be considered timely

'where specific and related instances of discrimination are permitted by the employer to continue

unremedied for so long as to amount to a discriminatory policy or practice." Sotomayor v. City of

New York, 862 F.Supp.2d 226, 250 (E.D.N.Y. 2012) (quoting Fitzgerald v. Henderson, 251 F.3d

345, 359 (2d Cir. 2001)) (applying the continuing violation exception to discrimination claims

pursuant to the NYCHRL).  As the Background section above illustrates, Morgan alleges

numerous incidents of discriminatory actions based on his national origin, beginning with this

failure to promote.  For the purposes of this motion, these are sufficient to amount to a plausible

allegation of a discriminatory policy or practice, and therefore, Morgan's disparate treatment

claim based on the 2007 failure to promote is actionable.

   Nonetheless, only Morgan's national origin discrimination claim arising out of the

2007 failure to promote is saved by the continuing violation exception.  A fair reading of the

Amended Complaint is that the 2007 event was part of a long and continuing pattern of

discrimination based upon national origin.  Conversely, Morgan's gender discrimination claim

based on the 2007 failure to promote, aside from not having been adequately alleged, is a

discrete event not otherwise tied to other allegations of gender discrimination.  Therefore, the

gender-based discrimination claim based on this event is dismissed as untimely.

> c.  Defendants' Motion to Dismiss Plaintiff's NYSHRL and NYCHRL Claims
>     <u>Against Attorney General Schneiderman and HR Director Pablo is Granted.</u>

Individual employees may be held personally liable under the NYSHRL and

NYCHRL if they participate in discriminatory conduct.  <u>See</u> <u>Feingold</u>, 366 F.3d at 157-59; N.Y.

Exec. Law §296(6).  This liability, known as aider-and-abettor liability, may extend to

supervisors who failed to investigate or take appropriate remedial measures despite being

informed about the existence of alleged discriminatory conduct.  <u>See</u> <u>Feingold</u>, 366 F.3d at 157-

59; <u>Lewis v. Triborough Bridge and Tunnel Auth.</u>, 77 F.Supp.2d 376, 384 (S.D.N.Y. 1999)

("[T]he case law establishes beyond cavil that a supervisor's failure to take adequate remedial

measures can rise to the level of 'actual participation' under HRL §296(6).").  Defendants move to

dismiss Morgan's NYSHRL and NYCHRL claims as against Attorney General Schneiderman

and HR Director Pablo for failure to plausibly allege the personal involvement of either

defendant in discriminatory conduct.

Morgan makes numerous conclusory allegations that Attorney General

Schneiderman and Pablo discriminated against Morgan and failed to investigate his complaints.

However, Morgan fails to allege any facts which could tend to show that either defendant was

ever aware of Morgan's allegations of discrimination or otherwise participated in discriminatory

conduct.  As discussed above, Morgan fails to factually allege that he ever brought

discriminatory conduct to the attention of any of his superiors; a review of the numerous

complaints filed by Morgan which are attached to the Amended Complaint confirms that none of

those complaints identified discriminatory conduct.  Any alleged failure to investigate these

complaints is therefore insufficient to suggest actual participation in discriminatory conduct, as is

required for aider-and-abettor liability.[7]

   In his opposition brief, Morgan points to an e-mail he sent to Pablo on October

31, 2010, which Morgan attached to the Amended Complaint.  (Am. Compl. at 31-38.)  Morgan

relies on this e-mail to demonstrate that Pablo was aware of Morgan's complaints and that by

failing to investigate, he participated in discriminatory conduct.  However, the subject of this e-

mail is Morgan's dispute of a penalty of a loss of vacation days imposed on Morgan because

Morgan contacted a confidential informant in violation of his supervisors' repeated orders not to

do so.  While Morgan at one point mentions "I have been subjected to a lot of harassment and

abuse from colleagues, because I request that everyone act professionally and politely in the

office and outside in the field," this is insufficient to alert Pablo to any alleged discriminatory

conduct.  (Id. at 36.)

   Because Morgan fails to plead facts that plausibly tend to show that Attorney

General Schneiderman or Pablo participated in discriminatory conduct, defendants' motion to

dismiss is granted.

   d. Defendants' Motion to Dismiss Plaintiff's NYSHRL and NYCHRL Disparate
    Treatment and Hostile Work Environment Claims is Denied.

   As discussed above in relation to Morgan's Title VII claims, Morgan has

adequately alleged a national origin discrimination claim arising from Morgan's termination and a

hostile work environment claim.  Therefore, defendants' motion to dismiss these claims pursuant

to the NYSHRL and the NYCHRL is denied.

---

[7] Even if these complaints had identified discriminatory conduct, many of them predate Attorney General
Schneiderman's assumption of office on January 1, 2011.

Because they were dismissed on timeliness grounds, the Court did not address the adequacy of Morgan's additional national origin discrimination claims arising from the alleged 2007 and 2009 failures-to-promote.  For the reasons discussed above regarding the mimicking and ridiculing of Morgan's accent, the Court concludes that Morgan has pled sufficient facts to state disparate treatment claims based on these incidents.  Thus, defendants' motion to dismiss these failure-to-promote claims is denied.

    e. Defendants' Motion to Dismiss Plaintiff's NYSHRL and NYCHRL <u>Retaliation Claims is Granted.</u>

The analysis of Morgan's retaliation claims under the NYSHRL is the same as the analysis under Title VII.  <u>See</u> <u>Weinstock</u>, 224 F.3d at 42 n.1.  Thus, for the reasons described above, defendants' motion to dismiss Morgan's retaliation claims under the NYSHRL is granted.

The analysis of Morgan's retaliation claims under the NYCHRL is broader than the analysis under Title VII, because under the NYCHRL "retaliation 'in any manner' is prohibited, and '[t]he retaliation . . . need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment." <u>Fincher v. Depository Trust and Clearing Corp.</u>, 604 F.3d 712, 723 (2d Cir. 2010) (quoting N.Y.C. Admin. Code § 8-107(7)); see also <u>Williams</u>, 61 A.D.3d at 69-72.  Taking this less restrictive standard into account, the Court nonetheless finds that Morgan has failed to plausibly allege a retaliation claim pursuant to the NYCHRL.  Morgan fails to adequately allege that he engaged in any protected activity, or had a reasonable belief that he was doing so.  Therefore, defendants' motion to dismiss Morgan's retaliation claims under the NYCHRL is granted.

CONCLUSION

CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the Amended Complaint is GRANTED in part and DENIED in part. Defendants' motion to dismiss is GRANTED with respect to: all claims against the individual defendants pursuant to Title VII; Morgan's disparate treatment claims pursuant to Title VII arising from the 2007 and 2009 failures-to-promote; Morgan's gender discrimination claim pursuant to Title VII; Morgan's retaliation claims pursuant to Title VII; all claims against the OAG pursuant to the NYSHRL and the NYCHRL; all claims for money damages against the individual defendants in their official capacities pursuant to the NYSHRL and the NYCHRL; Morgan's gender discrimination claim pursuant to the NYSHRL and the NYCHRL; Morgan's disparate treatment claim pursuant to the NYSHRL arising from the 2007 failure to promote; all claims against Attorney General Schneiderman and HR Director Pablo; and Morgan's retaliation claims pursuant to the NYSHRL and the NYCHRL. Defendants' motion to dismiss is DENIED with respect to: Morgan's disparate treatment claim pursuant to Title VII arising from his termination; Morgan's hostile work environment claim pursuant to Title VII; Morgan's disparate treatment claim pursuant to the NYCHRL arising from the 2007 failure to promote; Morgan's disparate claims pursuant to the NYSHRL and the NYCHRL arising from the 2009 failure to promote and Morgan's termination; and Morgan's hostile work environment claim pursuant to the NYSHRL and the NYCHRL.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
February 8, 2013

- 26 -